IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| In re: GRETTER AUTOLAND, INC.,<br><br>Debtor. | Case No. 14-02831als[1]<br><br>Chapter 11 |

**MOTION FOR ORDER APPROVING SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES, AND FOR OTHER RELATED RELIEF:**

COMES NOW the Debtor, Gretter Autoland, Inc. (the "Debtor"), by its attorneys, Bradley R. Kruse and the law firm of Brown, Winick, Graves, Gross, Baskerville and Schoenebaum, P.L.C., and for its Motion for Order Approving Sale of Substantially All of the Debtor's Assets, Free and Clear of All Liens, Claims and Encumbrances (the "Motion"), respectfully states as follows:

The Debtor seeks authorization from the Court for the sale of substantially all of the Estate's assets and such other non-debtor assets as the Debtor may be authorized to convey (the "Assets") pursuant to § 363(b) of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), free and clear of claims, liens and other encumbrances and, in connection therewith, approving the assumption and assignment of certain executory contracts pursuant to § 365 of the Bankruptcy Code and Bankruptcy Rule 6006. Toward that end, the Debtor requests that the Court enter an order (a) fixing the date and time of a hearing (the "Sale Hearing"); (b) approving the form,

---

[1] Jointly Administered with: *In re Gretter Ford Mecury, Inc.*, Case No. 14-02832-als; and *In re Gretter Chevrolet*, Case No. 14-02833-als.

1

manner, and form of notice of the Sale Hearing; and (c) establishing procedures for determining

cure claims, if any, with respect to the Debtor's assumption and assignment of executory

contracts pursuant to the proposed sale of its assets.

## **INTRODUCTION**

The Debtor has received and approved, after preliminary discussions with Ally Financial

Washington State Bank, and the Committee, the attached Letter of Intent (the "LOI")[2] with

Edwards Auto Group (the "Purchaser"), dated as of January 16, 2015, pursuant to which the

Debtor proposes to sell substantially all of its assets as set forth in the LOI (the "Assets") free

and clear of all liens, claims and encumbrances.  A true and accurate copy of the LOI is attached

hereto as Exhibit A.  The Debtor anticipates the prompt preparation and execution of a definitive

asset purchase agreement with the Purchaser (the "APA"), incorporating the terms of the LOI.

The Debtor's consummation of the proposed sale with the Purchaser, pursuant to the terms of the

LOI and anticipated APA, shall be subject to higher and better offers, if any, received at or

before the Sale Hearing.  The proposed sale is the result of substantial good faith, arms' length

negotiations, and provides a vehicle for the Debtor to maximize asset values.

## **JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and

1334. The statutory predicates for the relief sought herein are sections 105(a), 363(b), (f), (m),

(n), and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006 and 9014.

Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is

---

[2] In the event a definitive APA cannot be reached with the proposed Purchaser, the Debtor reserves the right to file an APA with an alternative purchaser.

proper before this Court pursuant to 28 U.S.C. § 1409.

## BACKGROUND

2.      The Debtor is an automobile dealership located in Washington, Iowa, and is

engaged in the sale and leasing of new and used vehicles to retail customers, as well as in the

servicing vehicles.  The Debtor holds two manufacturer franchises, one from General Motors and

one from Ford.

3.      The Debtor's financial difficulties leading up to its filing of this bankruptcy case

stem from a variety of factors, including extensive losses on the sale of used cars, significant

costs incurred in making manufacturer required updates to its business premises, high advertising

costs, and high debt service costs.

## THE CHAPTER 11 CASE

4.      A Voluntary Petition under Chapter 11 of the Bankruptcy Code [Docket No. 1]

was filed by the Debtor on December 1, 2014 ("Petition Date").  The Debtor has since been

operating its business and managing its assets as a Debtor-in-Possession pursuant to Bankruptcy

Code Sections 1107 and 1108.

5.      At the start of the Debtor's bankruptcy, it did not have sufficient unencumbered

funds to perform its business operations.  The Debtor is currently seeking extension of authority

from the Court to use the cash collateral of various secured creditors, as without the use of the

cash collateral of the secured creditors, the Debtor would be unable to fund critical operating

functions.  Specifically, the Debtor has entered into a stipulation for the use of cash collateral

with Washington State Bank and Ally Financial, Inc. (the "Stipulation"), which expires on

February 17, 2015.

3

6.      On December 12, 2014, the United States Trustee filed a motion to dismiss the Debtor's case, which motion is currently pending before the Court.  On February 13, 2015, the United States Trustee filed a second motion to dismiss, which is also currently pending.  The Debtor believes that most, if not all, of the issues raised in the U.S. Trustee's motions have been resolved or can be resolved such that dismissal is not warranted.

7.      The Debtor is informed and believes that the Purchaser's interest in purchasing the Debtor's car dealership business is conditioned on the dealership remaining open as a going concern.  The Debtor also believes that these factors would be important to any other potential purchaser of the Debtor's Assets.

## THE PROPOSED SALE

8.      Prior to the Petition Date, the Debtor had actively been marketing its car dealership business through a professional broker since May 15, 2014.  Following the Petition Date, the Debtor has aggressively marketed the sale of its assets, discussing and negotiating the sale to numerous interested parties, and working closely with its major secured creditors.

9.      On January 16, 2015, the Debtor received the LOI from Purchaser for the sale of substantially all of the Debtor's car dealership assets, plus the sale of the dealership real estate currently leased by the Debtor (subject to the Court approval of same).

10.     The Debtor believes that the terms reflected in the LOI represent the highest and best terms of sale that the Debtor can expect to receive for its car dealership business at this time.

11.     The LOI and anticipated APA provide a vehicle for the disposition of substantially all of the Estate's operating assets and, at the same time, establishes a benchmark by which the Debtor may appraise any alternative offers arising from the marketplace.

4

12.     The Debtor seeks approval of the proposed sale subject to the submission of higher and better offers.

## ADDITIONAL DISCLOSURES

13.     Prior to the Sale Hearing, the Purchaser shall complete a disclosure statement, sworn to under the penalty of perjury, setting forth, among other things: (a) any and all connections or affiliations of the Purchaser with any creditors or parties in interest in the case, including, without limitation, connections or affiliations with the Debtor's principals or members of the Debtor's management; and (b) the fact that the Purchaser has not engaged in any improper conduct with actual or potential bidders for the Assets.

## THE SALE IS SUPPORTED BY SOUND BUSINESS JUDGMENT AND SHOULD BE APPROVED

14.     The Debtor submits that the terms of the LOI are fair and reasonable, and that ample authority exists for the approval of the sale of the Assets to the Purchaser.  Section 363(b) of the Bankruptcy Code provides that a Debtor, after notice and a hearing, may use, sell, or lease property of the estate other than in the ordinary course of business.  In pertinent part, the section provides:

> (b)(1) The trustee, after notice and hearing, may use, sell, or lease,
> other than in the ordinary course of business, property of the estate.

*See* 11 U.S.C. § 363(b)(1).

15.     In order for a court to approve a request for the use of property of the estate outside the ordinary course of business, the court must find that the proposed course of action is supported by sound business reasons. *See Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.),* 722 F.2d 1063, 1071 (2nd Cir. 1983); *see also In re Chateaugay Corp.,* 973

F.2d 141 (2nd Cir. 1993); *Bartel v. Bar Harbor Airways, Inc.,* 196 B.R. 268, 273 (S.D.N.Y.

1996); *In re Caldor, Inc.-* NY, 193 B.R. 182, 187 (Bankr. S.D.N.Y. 1996); *In re Thomas

McKinnon Securities, Inc.,* 120 B.R. 301 (Bankr. S.D.N.Y. 1990).  In reviewing such proposed

transactions, courts should give substantial deference to the business judgment of the Debtor or

debtor-in-possession. *See e.g., Esposito v. Title Inc.* Co. *of Pa. (In re Fernwood Mkts.),* 73 B.R.

616, 621 n.2 (Bankr. E.D. Pa. 1987).

16.      The Debtor submits that consideration of these factors militates in favor of this

Court's approval of the proposed sale.  The Debtor is concerned that unless it is permitted to

undertake an asset sale at this time, the value of the Estate's Assets will suffer, in particular, the

name recognition and good will in the industry.  Thus, approval of the LOI and anticipated APA

provide the Debtor the ability to maximize the value of the estate assets.

17.      Based upon the foregoing, the Debtor submits that the proposed sale of the Assets

is in the best interests of the estate and its creditors, and is based upon sound, reasoned and

informed business judgment warranting this Court's approval.  *See In re Lionel Corp.,* 722 F.2d

at 1071; *Bar Harbor Airways, Inc.,* 196 B.R. at 273; *In re Caldor, Inc. -* NY, 193 B.R. at 187.

18.      The Debtor and the Purchaser seek findings that the transactions contemplated by

the proposed sale are (a) subject to the protections afforded to "good faith" purchasers under

§ 363(m) of the Bankruptcy Code and (b) not subject to avoidance under § 363(n) of the

Bankruptcy Code. Section 363(m) of the Bankruptcy Code provides that:

> The reversal or modification on appeal of an authorization under
> section (b) or (c) of this section of a sale or lease of property does
> not affect the validity of a sale or lease under such authorization to
> an entity that purchased or leased such property in good faith,
> whether or not such entity knew of the pendency of the appeal,

6

unless such authorization and such sale or lease were stayed
pending appeal.

*See* 11 U.S.C. § 363(m).  In addition, section 363(n) of the Bankruptcy Code provides, in

pertinent part, that:

> The trustee may avoid a sale under this section if the sale price was
> controlled by an agreement among potential bidders at such sale,
> or may recover from a party to such agreement any amount by
> which the value of the property sold exceeds the price at which
> such sale was consummated, and may recover any costs, attorneys'
> fees, or expenses incurred in avoiding such sale or recovering such
> amount . . . [including] punitive damages . . . .

11 U.S.C. § 363(n).

     19.    The negotiations and the resulting transaction contemplated by the LOI and

anticipated APA are the result of good faith and arm's length negotiations between the Debtor

and the Purchaser, and resulted in a purchase price that is both fair and reasonable in light of the

circumstances.  At the Sale Hearing, the parties will adduce evidence in support of the foregoing

and will request that the Court incorporate findings on these matters as part of the Order

approving the sale.

## THE SALE SHOULD BE APPROVED FREE AND
## CLEAR OF ALL LIENS AND ENCUMBRANCES

     20.    Pursuant to § 363(f) of the Bankruptcy Code, after notice and a hearing, a Debtor

may sell property of the estate free and clear of all liens and encumbrances. In pertinent part, the

section provides:

> (f) The trustee may sell property under subsection (b) or (c) of this
> section free and clear of any interest in such property of an entity
> other than the estate, only if-

> > (1)    applicable non-bankruptcy law permits sale of such
> > property free and clear of such interest;

(2)     such entity consents;

(3)     such interest is a lien and the price at which the property
is to be sold is greater than the aggregate value of all liens
on such property;

(4)     such interest is in bona fide dispute; or

(5)     such entity could be compelled, in a legal or equitable
proceeding, to accept a money satisfaction of such
interest.

11 U.S.C. § 363(f).  Here, the requirements of § 363(f) are satisfied inasmuch as the lien

creditors either do not object to the sale of the Assets or, to the extent of any competing title

claims, such claims are in *bona fide* dispute.

<u>ASSUMPTION AND ASSIGNMENT
OF EXECUTORY CONTRACTS</u>

21.     Section 365 of the Bankruptcy Code authorizes a Debtor to assume and assign

executory contracts or unexpired leases subject to court approval. The LOI provides for the

assumption and assignment of various executory contracts and unexpired leases, as designed in

the LOI (the "Executory Contracts").  In addition to these Executory Contracts, it is anticipated

that the Purchaser may wish to assume additional executory contracts to be identified in the

anticipated APA.

22.     The decision to assume and assign an executory contract or unexpired lease is

based upon the exercise of the debtor's "business judgment."  *NLRB v. Bildisco & Bildisco,* 465

U.S. 513, 523 (1984); *In re III Enterprises Inc. V.,* 163 B.R. 453, 469 (Bankr. E.D. Pa. 1994)

("Generally, a court will give great deference to a debtor's decision to assume or reject the

contract.  A Debtor need only show that its decision to assume or reject the contract is an

exercise of sound business judgment - - a standard which we have concluded many times is not

difficult to meet"). Section 365(b) of the Bankruptcy Code requires that a Debtor or debtor-in-possession satisfy certain requirements at the time of assumption if a default exists under the contract or lease to be assumed.

23.     Here, the Debtor has made the business decision to sell the Assets to Purchaser pursuant to the LOI, subject to higher and better offers. As the estate holds property and equipment necessary to the conduct of the business pursuant to dealer franchises and various lease agreements, a meaningful element of the value of the business to be sold stems from the Executory Contracts. If the Debtor is not able to assume and assign the Executory Contracts, the sale of the Assets could be substantially impaired — resulting in reduced proceeds for the benefit of the estate.

24.     To effectuate the assumption/assignment process, the Debtor proposes to serve the non-debtor parties to the Executory Contacts, advising each of them of the proposed assumption and assignment of such Executory Contract (the "Notice Of Assumption/Assignment of Executory Contracts"). The Notice Of Assumption/Assignment of Executory Contracts will set forth (a) the name and address of the non-debtor parties to the Executory Contracts proposed to be assumed and assigned to the Purchaser; (b) the nature of the Executory Contract; and (c) the amounts of any cure costs that the Debtor believes to be due and owing as reflected on the books and records of the Debtor. The Purchaser is responsible for paying cure costs, if any, under any Executory Contracts that are ultimately assumed and assigned to Purchaser. Purchaser will have the right to withdraw its request as to any contract or lease as to which Purchaser is unsatisfied as to the cure amount or other requirements of assumption or assignment.

25.     In order to facilitate the sale process, the Debtor requests that non-Debtor parties

to Executory Contracts must be required to file a claim setting forth all claims and arrearages against the estate under such Executory Contracts (the "Cure Claims").  The Debtor further requests that the Court hear any disputed Cure Claims at the Sale Hearing or a later date to be determined by the Court.  The Debtor further requests that the Court provide that any party that is required to file a Cure Claim, but fails to do so, shall be bound by the cure amount corresponding to its contract as set forth in the Debtor's notice of intent to assume and assign and shall be forever barred from asserting any other claim(s) against the Debtor, its estate and/or any successful purchaser of the Assets arising prior to closing under such Executory Contract.

## NOTICE

26.     The Debtor proposes that a true and complete copy of the Motion together with its exhibits be served upon: (a) counsel to the Purchaser, (b) counsel for Washington State Bank, Ally Financial, Inc., Hills Bank & Trust Company, and Two Rivers Bank & Trust, (c) counsel to the Committee, (d) all non-debtor parties to the Executory Contracts, (e) all known creditors who have or assert a lien against the Debtor's Estate's Assets; (f) the United States Attorney's Office for the District of Iowa; and (g) the Office of the United States Trustee.

27.     The Debtor further requests that the Court approve the form of notice of the Sale Hearing annexed as Exhibit B hereto (the "Notice").  The Debtor proposes to serve a copy of the Notice upon (a) all known creditors of the Debtor; (b) all federal, state and local taxing authorities in jurisdictions in which the Debtor operated; and (c) all parties that have filed a notice of appearance in this case.

WHEREFORE, the Debtor respectfully requests that this Court enter an order (a) fixing the date and time of the Sale Hearing; (b) approving the form manner and form of notice of the

10

Sale Hearing; (c) fixing the last date by which the non-Debtor parties to the Executory Contracts must file Cure Claims; and (d) approving the LOI and authorizing the sale of the Assets pursuant to § 363(b) of the Bankruptcy Code and Rule 6004 of the Bankruptcy Rules, free and clear of claims, liens and other encumbrances, subject to the execution of an acceptable APA and subject to any higher and better offers; and  (e) granting the Debtor such other and further relief as this Court deems just and proper.

Dated: February 17, 2015

/s/ Bradley R. Kruse
_____
Bradley R. Kruse
Drew Larson
BROWN, WINICK, GRAVES, GROSS,
BASKERVILLE AND SCHOENEBAUM, P.L.C.
666 Grand Avenue, Suite 2000
Des Moines, IA 50309-2510
Telephone:  515-242-2460
Facsimile:   515-323-8560
E-mail:  kruse@brownwinick.com

ATTORNEYS FOR THE DEBTOR

CERTIFICATE OF SERVICE

On February 17, 2015, this document was served electronically on parties who receive

electronic notice through CM/ECF as listed on CM/ECF's notice of electronic filing.

*/s/ Bradley R. Kruse*

     

02/16/2015

Drew Larson
666 Grand Ave.
Suite 2000 Ruan Center
Des Moines, IA 50309

RE: Gretter Autoland Purchase

Dear Mr. Larson,

David Edwards hereby submits a letter of intent to purchase Gretter Autoland's (Tom Gretter) real & personal property (201 S Airport Road, Washington, IA 52353 & Storage Lot), fixed Assets (all owned equipment & tools), new vehicle inventory, General Motor Franchises (Chevrolet, Buick, & GMC), and Ford Franchise.

Used Vehicle Inventory will be negotiated on a car by car appraisal during the due diligence process, any car that we cannot come to an agreed upon price Mr. Gretter can find a third party buyer. Mr. Edwards will purchase all GM & Ford "Current" parts inventory that is eligible to be returned per manufacturer agreement. Per this offer Mr. Edwards is assuming none the liabilities or long-term contracts.

As consideration for this, we have priced our offer based on:

| | | |
|---|---|---|
| Dealership Parcel | 1116376006 | 700,000.00 |
| Storage Parcel | 1116400037 | 65,000.00 |
| Fixed Assets | | 50,000.00 |
| Blue Sky Goodwill | | 350,000.00 |
| | | 1,165,000.00 |

PLUS ALL RETURNABLE PARTS INVENTORY AND NEW
VEHICLE INVENTORY

Mr. Edwards is offering $1,165,000 for everything stated above. This agreement is contingent of being able to purchase everything listed above and factory approval by GM and Ford. This letter is not an official purchase agreement. All terms and condition of the proposed transaction would be stated in the Purchase Agreement, to be negotiated, agreed and executed by both parties.

If Mr. Edwards is selected as a prospective buyer, we would be able to close immediately. Our only contingency is based on factory approval of the Ford franchise. We are currently a GM dealer and should have no issue getting approved.

Sincerely,

Ron Fortenbury *Agent of David H. Edwards*
Edwards Auto Group
Corporate Treasurer
402-490-9960

1010 34th Ave. Council Bluffs, IA  51501    (712)366-2541