# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF IOWA

---------------------------------------------------------------x
:
In re: : Case No. 14-02831
:
GRETTER AUTOLAND, INC., : Chapter 11
:
Debtor. :
---------------------------------------------------------------x

### MOTION FOR RELIEF TO FILE AND SUPPLEMENTAL PLEADING REGARDING DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTOR TO ASSUME AND ASSIGN EXECUTORY CONTRACT WITH GENERAL MOTORS LLC PURSUANT TO 11 U.S.C. § 365

On May 29, 2015, the above-captioned debtor (the "Debtor") filed the *Debtor's Motion for the Entry of an Order Authorizing the Debtor to Assume and Assign Executory Contract with General Motors LLC Pursuant to 11 U.S.C. § 365* (Docket No. 169) (the "Motion"). On June 15, 2015, General Motors LLC ("GM") filed a timely objection to the Motion (Docket No. 190) (the "Initial Objection"). Subsequent to the filing of the Initial Objection, however, GM has been informed of facts that are relevant to Motion and that further support GM's request that the Court deny the Motion. Accordingly, pursuant to Federal Rule of Bankruptcy Procedure 7015(d),[1] GM requests that the Court permit GM to file the following supplemental objection (the "Supplemental Objection").[2]

---

[1] Bankruptcy Rule 7015(d) incorporates Federal Rule of Civil Procedure 15(d), entitled "Supplemental Pleadings," and provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."

[2] The Supplemental Objection is intended to supplement, and not replace, the Initial Objection. GM reaffirms all arguments made in the Initial Objection.

NAI-1500441180v1

**SUPPLEMENTAL OBJECTION**

GM has learned that subsequent to the filing of the Initial Objection, the Debtor has committed a material, postpetition breach of the Dealer Sales and Services Agreement. Section 4.4.2 of the agreement provides: "No change in location or in the use of Premises, including addition of any other vehicle lines, will be made without General Motors' prior written authorization pursuant to its business judgment." The section 4.4.2 restriction on adding new lines to the Debtor's dealer location is also further supported and enforced by another executed agreement between the parties, an Exclusive Use Agreement dated January 28, 2008. Under the Exclusive Use Agreement, the "Dealership Premises shall not be used for any purpose other than Dealership Operations for the Existing Model Lines . . . without the prior written consent of GM, which consent may be granted or withheld in GM's sole discretion." *See* Exclusive Use Agreement § 2.

The Dealer Sales and Services Agreement also provides that GM "is not obligated to approve any proposed changes in management or ownership under this Article unless Dealer makes arrangements acceptable to General Motors to satisfy any indebtedness of Dealer to General Motors <u>and other commitments</u> of Dealer to General Motors." *See* Dealer Sales and Services Agreement § 12.2.6 (emphasis added). In other words if the Debtor were to breach the Exclusive Use Agreement, it would be breaching one of its "other commitments" to GM, which would trigger section 12.2.6 and would give GM the right to reject any proposed change of management or ownership.

Notwithstanding these clear contractual provisions, however, GM has learned that the Debtor and/or Edwards has begun to convert the current dealership into a joint GM/Ford dealership. By converting the dealership to a joint GM/Ford dealership without GM's consent,

the Debtor has breached section 4.4.2 of the Dealer Sales and Services Agreement and section 2 of the Exclusive Agreement because adding Ford to the dealership necessarily results in the "addition of any other vehicle line" and a vehicle line other than the "Existing Model Lines."[3] Consequently, by breaching section 2 of the Exclusive Use Agreement, the Debtor triggered section 12.2.6 of the Dealer Sales and Services Agreement, which gives GM the right to reject the Debtor's proposed sale.

The Debtor may only assume and assign the Dealer Sales and Services Agreement to Edwards in its entirety. *See Tama Beef Packing Inc.*, 277 B.R. 407, 412 (Bankr. N.D. Iowa 2002) ("It is axiomatic that an executory contract must be assumed in its entirety."). Accordingly, if the Debtor is to assume and assign the agreement to Edwards, Edwards, like the Debtor, must be subject to section 4.4.2, which requires GM's consent before a new model line (such as Ford) can be added to the Debtor's GM dealership, and the provisions of the binding exclusive use agreement. Because the Debtor has breached the agreements by adding Ford to the dealership without GM's consent, it cannot assume and assign the agreement until such breaches has been cured and the Debtor has provided adequate assurance of future performance. *See* 11 U.S.C. § 365(b)(1).

GM does not necessarily oppose the sale of the Debtor's dealership to Edwards as long as (a) the Dealer Sales and Services Agreement is assumed and assigned in its entirety; (b) the Debtor cures all breaches, including, but not limited to, the breach of section 4.4.2 of the Dealer Sales and Services Agreement and any breaches of the exclusive use agreement regarding the facility identified in the dealer agreement,[4] (c) Edwards operates the dealership exclusively as a

---

[3]    Under the Exclusive Use Agreement, the Existing Model Lines are Chevrolet, Cadillac, Buick, Pontiac, and GMC.

[4]    GM reserves the right to pursue any and all damages and other remedies on account of the Debtor's or Edwards' breach of the Dealer Sales and Services Agreement and the Exclusive Use Agreement.

GM dealership, and (d) Edwards successfully completes the review process that is required of all GM dealers and agrees to perform the standard requirements for any dealer.  Otherwise, for the reasons set forth herein and in the Initial Objection, the Dealer Sales and Services Agreement should not be assumed and assigned to Edwards.

Dated: July 17, 2015

Respectfully submitted,

/s/ Dallas J. Janssen
Dallas J. Janssen
JANSSEN LAW OFFICE
700 Second Avenue, Suite 103
Des Moines, Iowa 50309-1712
Telephone: (515) 274-9161
Facsimile: (515) 274-1364
DJanssen@dwx.com

ATTORNEY FOR GENERAL MOTORS LLC

OF COUNSEL:

Jeffrey J. Jones
Christopher M. Healey
JONES DAY
325 John H. McConnell Blvd., Suite 600
Columbus, OH 43215
Telephone: (614) 469-3939
Facsimile: (614) 461-4198
jjjones@jonesday.com
cmhealey@jonesday.com