IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF IOWA

In re: GRETTER AUTOLAND, INC.,                CASE NO. 14-02831-als

  Debtor.                                     Chapter 11

**EDWARDS' BRIEF IN SUPPORT OF DEBTOR'S MOTION FOR THE ENTRY OF AN ORDER AUTHORIZING THE DEBTOR TO ASSUME AND ASSIGN EXECUTORY CONTRACT WITH FORD MOTOR COMPANY PURSUANT TO 11 USC § 365 (DOCKET NO. 168) AND DEBTOR'S MOTION FOR THE ENTRY OF AN ORDER AUTHORIZING THE DEBTOR TO ASSUME AND ASSIGN EXECUTORY CONTRACT WITH GENERAL MOTORS PURSUANT TO 11 USC § 365 (DOCKET NO. 169)**

COMES NOW Edwards Auto Plaza, Inc. ("Edwards") through its counsel of the law firm of Erickson & Sederstrom, P.C. LLO and respectfully submits this Brief in Support of Debtor's Motion for the Entry of An Order Authorizing the Debtor to Assume and Assign Executory Contract with Ford Motor Company Pursuant to 11 USC § 365 (Docket No. 168) and Debtor's Motion for the Entry of An Order Authorizing the Debtor to Assume and Assign Executory Contract with General Motors Pursuant to 11 USC § 365 (Docket No. 169).

Edwards respectfully submits this Brief to emphasize its support for the Debtor's two motions for assumption and assignment and the rationale. For convenience and clarity, the two motions are collectively referred to throughout this Brief as the "Debtor's Motions" and separately as the "Ford Motion" and the "GM Motion" as appropriate. Ford and GM are collectively referred to as the "Manufacturers."

1

## INTRODUCTION

Debtor seeks to assume and to assign its Franchise Agreements with and Ford and GM to Edwards Washington, Inc., an entity created by Edwards to hold the automobile dealer assets that Edwards seeks to obtain. The franchise agreements include the "General Motors LLC Dealer Sales and Service Agreement" dated November 1, 2010 as amended ("GM Franchise Agreement") and the October 31, 1997 "Ford Sales and Service Agreement" as amended ("Ford Franchise Agreement"), collectively the "Franchise Agreements". The assumption and assignment of the Franchise Agreements was contemplated in the Asset Purchase Agreement ("APA") (Docket No. 106-1, page 28) which references "Ford Franchise" and "General Motors Franchise". This portion of the APA has not been modified.

In order to evaluate Debtor's Motions, we urge the Court to consider not only the written contract agreements, but also the impact of Iowa law on those agreements. Iowa law strongly supports assumption and assignment. Edwards respectfully submits that all requirements for assumption and assignment of these contracts have been met, and the Court should enter an order granting the Debtor's Motions. To the extent that any disagreements exist between Ford or GM and Edwards, such issues should be subsequently addressed in an appropriate state forum.

Pursuant to APA paragraphs 5.9(b)(ii), 3.8, 3.2(a)(iv) and 3.3(f), Edwards is entitled to receive an order of the Court regarding Assumption and Assignment before it is obligated to close on its purchase.

## ANALYSIS AND ARGUMENT

The issue of executory contracts was deferred at the time of the March 27 hearing and Edwards agrees that the Franchise Agreements are "executory contracts" that can be assumed and assigned. "[F]ranchise rights which become part of the estate may be viable executory

contracts capable of assumption pursuant to § 365(b)(1) of the Code." *In re Tudor Motor Lodge Associates Ltd. Partnership*, 102 B.R. 936, 948 (Bankr. D.N.J. 1989).

**Assumption**

Section 365(a) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Upon finding that a debtor has exercised its sound business judgment in determining that the assumption of an executory contract or unexpired lease is in the best interest of the estate, a bankruptcy court should approve the assumption under § 365 of the Bankruptcy Code. See *In re Quantegy, Inc.*, 326 B.R. 467, 470 (Bankr. M.D. Ala. 2005). The Bankruptcy Code generally favors free assignability of contracts and leases as a means to maximize the debtor's estate. See, e.g., *Shaw Group, Inc. v. Bechtel Jacobs Co. (In re IT Group, Inc.)*, 350 B.R. 166, 177 (Bankr. D. Del. 2006).

Debtor has represented that it intends to assume the Ford Franchise and the GM Franchise because (i) doing so is an exercise of Debtor's sound business judgment and (ii) doing so is in the best interests of Debtor's estate and creditors. The APA specifically contemplates assumption and assignment of the Franchise Agreements. After all, any buyer would want the right to operate the GM and Ford Franchises. The value of the Debtor's estate would be greatly diminished without the Ford and GM franchises, because the real estate would likely not be used in the highest and best manner and the equipment would likely have to be liquidated. Simply stated, the predominant value of the transaction flows from the two franchises.

Debtor has represented, and Edwards agrees, that Debtor meets all requirements set forth in Section 365 of the Bankruptcy Code. Pursuant to § 365(b)(1), the debtor must (A) cure any existing defaults or provide adequate assurance that the debtor will promptly cure such default;

3

(B) compensate or provide adequate assurance that the debtor will promptly compensate the non-debtor party to such contract or lease, for any loss to such party resulting from the default; and (C) provide adequate assurance of future performance under such contract.

Edwards is prepared to offer testimony regarding its background and expertise in the industry and its financial resources. Edwards has offered testimony on these issues at two prior hearings in this case, and believes also that it will be appropriate for the Court to take judicial notice of this prior testimony. There can be no legitimate dispute regarding the ability of Edwards to provide adequate assurance of future performance.

**Assignment**

Debtor may assign an executory contract if "(A) the trustee assumes such contract … in accordance with [§ 365(b)] and (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease." 11 U.S.C. § 365(f)(2). "What constitutes 'adequate assurance of future performance' must be determined by consideration of the facts of the proposed assumption." *In re Fleming Companies, Inc.*, 499 F.3d 300, 307 (3rd Cir. 2007)(internal citations and quotations omitted). Assurance of future performance as contemplated by § 365 is adequate if the facts indicate that it is simply more probable than not that the assignee will continue to perform under the contract or lease. *In re Prime Motor Inns, Inc.*, 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994).

**Overarching Effect of Iowa Motor Vehicle Franchiser's Act and Case Law**

In order to evaluate Ford and GM's objections to assumption and assignment, the Court must consider the impact of the Iowa Motor Vehicle Franchiser's Act, codified at Chapter 322A of the Code of Iowa (the "Act") on the franchisor's contract terms. Iowa automobile dealers and dealers in every state are protected by state motor vehicle franchise laws. These franchise laws

4

were enacted "in recognition of [t]he disparity of bargaining power between automobile manufacturers and their dealers." *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox*, 439 U.S. 96, 100 (1978). These laws are intended to protect retail car dealers from abusive and oppressive acts by manufacturers. *Id.* The Iowa law is no different.

The Act was primarily designed to assure the public that motor vehicle franchisors would not, without good cause, terminate or discontinue dealerships, which could endanger current dealers in such a community. *Beckman v. Carson*, 372 N.W.2d 203, 207 (Iowa 1985); see also Iowa Code § 322A.2, .4, .11, .15, .16, and .18. *Beckman* emphasized that franchisors are the target of the Act. *Id.* In other words, the Legislature designed the Act to protect dealers and to protect the public interest by protecting businesses that make motor vehicle franchise-specific capital investments.

To that end, the provisions of the Act clearly demonstrate the Iowa legislature's determination, as a matter of public policy, to overrule and replace some of the unreasonable provisions that manufacturers typically insert in their contracts of adhesion. For example, the legislature accomplished this with the clear phrase "notwithstanding the terms, provisions, or conditions of any agreement or franchise" prefacing Sections 322A.2 (Discontinuing Franchise), .11 (Condition Barring Change in Franchise), and .12 (Sale of Transfer of Ownership).

The Iowa Supreme Court has consistently confirmed that the provisions of the Act overrule or replace the written terms of motor vehicle franchise agreements. *See generally Bob Zimmerman Ford, Inc. v. BMW N. Am., Inc.*, 679 N.W.2d 606 (Iowa 2004) (statute overrules franchisor's right of first refusal); *Midwest Auto. III, LLC v. Iowa Dep't of Transp.*, 646 N.W.2d 417 (Iowa 2002) (§ 322A.12 overrules contrary franchise terms); *Craig Foster Ford, Inc. v. Iowa Dept. of Transportation*, 562 N.W.2d 618, 622 (Iowa 1997) (franchisor cannot terminate on contract principles alone).

5

By claiming that Debtor materially breached the Franchise Agreements based on the language in those agreements Ford and GM choose to willfully ignore the controlling effect of the Act and Iowa case law. This Court must analyze any alleged breach of the Franchise Agreements in conjunction with the Act and relevant Iowa case law. *See In re Penn Traffic Co.*, 322 B.R. 63, 78 (Bankr. S.D.N.Y. 2005) ("State law, however, determines whether the failure to perform a remaining obligation is a material breach of the contract.").

**The Manufacturers' Objections**

Ford and GM filed objections to Debtor's Motions.

A. Ford's Objections.

Ford objects to the Debtor's Ford Motion based on two alleged breaches of the franchise agreement, and Ford further claims that neither Debtor nor Edwards provided Ford with adequate assurance of Edwards' future performance. Ford has not claimed that Edwards is financially unable to adequately assure of future performance. As addressed above, Edwards demonstrated in previous testimony that Edwards is able to provide adequate assurance. Edwards is prepared to provide further testimony as needed.

Ford's First Objection—Unauthorized Relocation. Ford alleges that Debtor previously breached the franchise agreement by relocating the Ford franchise operations from 201 Airport Road to a facility across the street at 214 Airport Road. Although Debtor parked some new Ford vehicles at 214 Airport Road, Debtor denies ever relocating the Ford franchise operations, sales or otherwise, from 201 Airport Road to 214 Airport Road. It is Edwards' understanding that Debtor has now relocated all Ford vehicles from 214 Airport Road to 201 Airport Road to absolutely clarify that Debtor is not operating the Ford franchise from 214 Airport Road. Therefore, Edwards anticipates that Debtor will testify that it cured any alleged breach.

6

Even if, *arguendo*, Debtor had moved the Ford franchise operations to 214 Airport Road, Ford's only remedy under Iowa law, <u>after</u> giving effect to the transfer of the franchise pursuant to I.C. § 322A.12, is to bring a termination action before the Iowa Department of Transportation for "good cause". I.C. 322A.2(1)(a). If Ford truly believed there was an unauthorized relocation, Ford could have brought such a termination action pre-petition against Debtor.

<u>Ford's Second Objection-Additional Line-Make at Facility</u>. Ford also alleges that a breach exists because the "aforementioned General Motors dealership is on the site that Ford approved for the Ford dealership." (Docket No. 191, p. 3, para. 8). Ford goes on to claim that any addition of GM franchise operations to the 201 Airport Road location constitutes a "change in usage" under the Ford Franchise Agreement. *Id.* Ford cannot make such a claim because Iowa law specifically voids such claims.

Because I.C. 322A.11(4) specifically provides that "notwithstanding the terms, provision, or conditions of any agreement or franchise … the fact that the dealership added an additional line-make [in this case a GM line-make] to the dealership if the dealership's facility is adequate to accommodate the additional line-make" "shall not be considered facts supporting a finding of good cause for the termination or noncontinuation of a franchise." I.C. 322A.11(4). More importantly, I.C. § 322A.22 specifically controls the addition of "other line-makes" (in this case the GM line-make) as follows:

> A <u>condition</u>, stipulation, or provision in a franchise <u>prohibiting</u> or restricting the franchisee from continuing another line-make at the dealership or <u>adding an additional line-make to the dealership is void</u>. This section does not limit a franchiser from establishing good cause for the termination of a franchise pursuant to sections 322A.2 and 322A.11 on the grounds that the franchisee's dealership facility is not adequate to accommodate an additional line-make that has been added to the franchisee's dealership.

(emphasis added).

Ford did not make any pre-petition objection or claim or demand that the facility at 201 Airport Road is inadequate to accommodate both Ford and GM line-makes. Neither did GM. Therefore, the Court should find that the existence of both Ford and GM line-makes at 201 Airport Road does not constitute a breach of the Ford franchise agreement.

Adequate Assurance. Although Ford does not formally object on the basis that it has not received adequate assurance from Edwards, any such objection would ring hollow given that Ford has already approved Edwards subject to the Ford's onerous facility preconditions.

Conclusion. Edwards respectfully submits that upon consideration of the Ford franchise agreement in conjunction with Iowa law, which together comprise the whole of the contract to be assumed and assigned, there is no actionable breach or default. Therefore, because Ford's two objections are either moot or without basis in law and Edwards has and will provide adequate assurance of future performance, the Court should grant Debtor's motion for assumption and assignment of the Ford franchise agreement.

B. General Motors' Objection

GM's First Objection-Adequate Assurance. GM objects to Debtor's GM Motion and states that neither Edwards nor the Debtor had contacted GM about curing any arrearage or provided GM with evidence of adequate assurance of future performance. Edwards believes this information is no longer current because of the approval letter that GM provided to Edwards after the date of this filing (an approval letter that included significant preconditions including facility requirements). By providing Edwards with an approval letter, even one subject to onerous facility preconditions, GM demonstrated that it has had a chance to adequately evaluate Edwards (which has been a GM dealer for many years). GM's objection references "curing any arrearage" (Docket No. 190, p. 1, para. 3) but no "arrearage" has ever been otherwise asserted by

GM, which has not filed a proof of claim for any arrearage. Therefore, GM's objection that Edwards has not provided adequate assurance of future performance rings hollow given that Ford and GM have approved of Edwards subject to the Manufacturers' facility preconditions.

GM's Second Objection—GM has not Given Prior Consent to the Franchise Transfer. GM also objected on the basis that the Court should not permit Debtor to assume and assign or to transfer the GM franchise without GM's prior consent. Any such provision is unenforceable under Iowa law so long as the incoming dealer can obtain an Iowa motor vehicle dealer license.

Iowa Code § 322A.12(1) governs the "Sale or transfer of ownership" of a franchise in Iowa:

> **Notwithstanding the terms, provisions, or conditions of an agreement or franchise,** subject to the provisions of section 322A.11, subsection 2, in the event of the sale or transfer of ownership of a franchisee's dealership by sale or transfer of the business or by stock transfer or in the event of a change in the executive management of a franchisee's dealership, the franchiser shall give effect to the change in the franchise unless the transfer of the franchisee's license under chapter 322 is denied or the new owner is unable to obtain a license under that chapter.

I.C. § 322A.12(1) (emphasis added).

When GM refused to give effect to a dealer transfer in *Buckwalter Motors, Inc., and Don Walker Chevrolet-AMC-Jeep, Inc. v. General Motors Corporation*, 593 F. Supp. 628 (S.D. Iowa 1984), when the parties completed a transfer without GM's prior consent, the court granted the purchaser injunctive relief requiring GM to give effect to the transfer. The Court held that GM's actions violated the provisions I.C. § 322A.12. The current situation falls squarely under the *Buckwalter* rules and rationale.

Because Iowa statutory and case law trumps the Franchise Agreement GM must **"give effect"** to the change in the franchise. Therefore, the Court should overrule and disregard GM's

9

objection that it did not provide prior consent to the transfer of the franchise to Edwards because it would fail to give effect to the transfer in violation of Iowa law.

<u>GM's 9024 Objection—Outside Agreement Prohibits Additional Line-Makes at Facility</u>. GM has not alleged any other particular breaches; however, on June 23, 2015, GM filed (Docket No. 201) an objection to an Amended 9024 Motion filed by Edwards at Docket No. 198. GM brought to light three secondary agreements that GM states the Debtor entered with GM on January 8, 2008 (Docket No. 201, p. 2) for the first time. GM did not raise the issue of the secondary agreements in its Objection to Debtor's Motion to Assume and Assign regarding GM. These agreements included the following: (1) Exclusive Use Agreement, (2) Summary Agreement, and (3) Termination and Release Agreement. GM recited that these agreements are confidential. GM further recited that these agreements included "separate consideration provided for said agreement." (Docket No. 201, p. 2).

Accordingly, these separate agreements, which are not included as contracts to be assumed pursuant to the APA or Debtor's current motion, are separate contracts with separate consideration. It is Edwards' understanding that Debtor rejected these contracts. Edwards requests the Court clarify in its order that these separate agreements are not a part of the GM franchise agreement Debtor will assume and assign to Edwards.

<u>Conclusion</u>. Edwards respectfully submits that upon consideration of the GM franchise agreement in conjunction with Iowa law, which together comprise the whole of the contract to be assumed and assigned, there is no actionable breach or default. Therefore, for the reasons stated above the Court should grant Debtor's motion for assumption and assignment of the GM franchise agreement.

**Ford and GM State Law Rights**

Ford and GM are attempting to use the bankruptcy process as a "back door" method to terminate Debtor's franchises, which they are otherwise prevented from doing without going through the specific procedures laid out in the Act. Neither Ford nor GM took any pre-bankruptcy actions against Debtor claiming good cause for termination. Granting Edwards the assignment of the Franchise Agreements does not preclude Ford or GM from bringing any action against Edwards as franchisee that it feels is warranted and appropriate under Chapter 322A. On the other hand, if the Court allows Ford and GM to block the assumption and assignment of the franchises to Edwards on the basis of the alleged breaches, which are not actionable under state law, the Court will circumvent Iowa law without use of the procedure established under I.CA. § 322A.2.

I.C.A. 322A.2 "Discontinuing franchise" provides as follows in pertinent part:

1. Unless otherwise provided in subsection 2, notwithstanding the terms, provisions, or conditions of any agreement or franchise, a franchiser shall not terminate or refuse to continue any franchise unless the franchiser has first established, in a hearing held under the provisions of this chapter, that both of the following apply:

   *a.* The franchiser has good cause for termination or noncontinuance.

   *b.* Upon termination or noncontinuance, another franchise in the same line-make will become effective in the same community, without diminution of the motor vehicle service formerly provided, or that the community cannot be reasonably expected to support such a dealership.

2. A franchiser may terminate a franchise for a particular line-make if the franchiser discontinues that line-make and a franchiser may terminate a franchise if the franchisee's license as a motor vehicle dealer is revoked pursuant to the provisions of chapter 322.

Edwards respectfully submits that upon consideration of the written Franchise Agreements and Iowa law, which together comprise the whole of the contract to be assumed and assigned, there is no actionable breach or default.

**Waiver**

Objections raised by the Manufacturers have been waived. Neither Ford nor GM claimed, prior to the Debtor's bankruptcy filing, that Debtor had defaulted or breached its Franchise Agreements.

If either Ford or GM had actually considered the Gretter dealership to be in breach of the Franchise Agreements, then Ford or GM could have attempted termination of Gretter's franchise prior to Debtor's bankruptcy filing. In order to terminate the Gretter franchise, Ford and/or GM would have been compelled to file a termination application with the IDOT Department of Inspections and Appeals. I.C. 322A.6.

Ford and GM's claims of ignorance about the physical configuration of the Debtor's dealership prior to the bankruptcy filing will not be supported by testimony. As such, both Manufacturers waived any such claim that Gretter had committed a pre-petition breach of the respective franchise agreement.

**Adequate Assurances Need not be Given for Every Contract Term**

As set forth above, Iowa law operating in conjunction with the written Franchise Agreements clearly permits assumption and assignment and the Manufacturers have waived their objections under these circumstances. The Court also has the authority to "excise or refuse enforcement of terms of a contract in order to permit assignment". *In re: Fleming Companies, Inc.*, 499 F.3d 300, 305 (3rd Cir. 2006). "It is clear that adequate assurances need not be given for every term of an executory contract." *Id.* "While the bankruptcy court has discretion to excise or waive a bargained-for element of a contract, 'Congress has suggested that the modification of a contracting party's rights is not to be taken lightly. Rather, a bankruptcy court … must be sensitive to the rights of the non-debtor contracting party … and the policy requiring

that the non-debtor receive the full benefit of his or her bargain.'" *Id.* (*quoting In re Joshua Slocum Ltd.*, 922 F.2d 1081, 1091 (3rd Cir. 1990)).

Under the facts of this case, Ford and GM will absolutely receive the full benefit of their bargain if the respective Franchise Agreements are assumed and assigned to Edwards. Ford and GM each contracted with Gretter pursuant to Franchise Agreements subject to Iowa law. Upon assumption and assignment to Edwards, both Ford and GM have the same Franchise Agreements subject to the same Iowa law, with all the same rights and remedies available under Iowa law as before. While Gretter had little to no bargaining power regarding entry into the Franchise Agreements in the first place, Ford and GM, sophisticated entities, will absolutely receive the full benefit of their bargains with Gretter if the Debtor's Motions are granted.

## CONCLUSION

Performance by the Debtor was adequate for Ford and GM prior to the Debtor's bankruptcy filing. While Ford and GM now complain, neither took action pursuant to Iowa law to terminate either franchise prior to the bankruptcy filing. Given the experience and financial stability of Edwards, there cannot be any legitimate question about the ability of Edwards to adequately assure of future performance. Edwards respectfully requests the Court grant the Debtor's Motions addressed herein.

Respectfully submitted: July 22, 2015.

By: /s/ Matthew V. Rusch
Tiernan T. Siems
Matthew V. Rusch
ERICKSON & SEDERSTROM, P.C.
10330 Regency Parkway Drive
Omaha, NE 68114
(402) 397-2200
(402) 390-7137 Fax
mrusc@eslaw.com
Attorneys for Edwards Auto Plaza, Inc.

13

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2015, the foregoing document was filed electronically with the Clerk of Court using the Court's CM/ECF system, which sent notification to all individuals who requested such notice through the CM/ECF system.

/s/ *Matthew V. Rusch*