IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF IOWA

In re:  GRETTER AUTOLAND, INC.,                    CASE NO. 14-02831-als

Debtor.                                            Chapter 7

**EDWARDS' BRIEF IN SUPPORT OF ITS APPLICATION
FOR ADMINISTRATIVE EXPENSES (FILING NO. 284)**

COMES NOW Edwards Auto Plaza, Inc. ("Edwards"), through its counsel of the law firm of Erickson & Sederstrom, P.C. LLO, and respectfully submits this Brief in support of its Application for Administrative Expense (Filing No. 284).  An objection was filed by the United States Trustee at Filing No. 295, and a joinder to that objection was filed by the Debtor at Filing No. 316.

Edwards filed, at Filing No. 284, an Application for an Administrative Expense claim pursuant to 11 U.S.C. Sec. 503(b).  The Application was based upon payments totaling $33,347.54 that were made by Edwards during June and July of 2015 to the Debtor.  These payments were for Debtor to pay employee wages so Debtor could continue business operations during that time frame.

It cannot be legitimately questioned that "[T]he actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after commencement of the case are treated as administrative expenses…" *See Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 4-5 (2000).

Notwithstanding this characterization of post-petition wages and salaries, the U.S. Trustee objected, and Debtor joined the objection.  The U.S. Trustee's objection is focused on

1

the circumstances through which Edwards became involved. The U.S. Trustee claims that Edwards provided these funds only for Edwards' own benefit and not for the benefit of the estate. Edwards disagrees. The funds which are the subject of the Administrative Expense claim were paid by Edwards to the Debtor in an effort to maintain the Debtor as a going concern. Edwards intended to secure the GM and Ford franchises of the Debtor, and Edwards intended to pay a certain price for the dealership and the associated real estate owned by others - including these franchises. In turn, Edwards' planned purchase price would infuse funds into the bankruptcy estate for the benefit of all creditors. To say that Edwards provided the funds solely for its own benefit is simply incorrect. As all parties know, the transaction was ultimately not completed because GM and Ford would not agree to transfer the franchises without conditions that precluded operation of the dealership in the manner Gretter had operated the dealership, and Debtor's Motions to Assume and Assign were denied.

Any self-interest by Edwards is not a bar to Edwards recovering an administrative expense. "[I]f competition increases the value that creditors realize then the party responsible for fostering the competition may be entitled to compensation." *In re SGS Studio, Inc.*, 256 B.R. 580, 584 (Bankr. N.D. Tex. 2000). Edwards was such a party in that it fostered competition going back to the auction.

The payments by Edwards were beneficial toward operation of the business by the Debtor. Clearly, these payments allowed the Debtor's business to continue operating. Although the sale to Edwards ultimately did not close, the funds provided by Edwards were a benefit to the estate. Gretter's operating report for June (Filing No. 262, Pages 25 and 26 show the deposits from Edwards of $11,252.21 and $11,979.12, respectively, into the Gretter operating account at Washington State Bank). Filing 262 further shows that funds from the account were disbursed

2

for a variety of operating expenses. The payments by Edwards certainly preserved more to be paid to others.

In addition, the Chapter 7 Trustee's counsel has not articulated details as to why he believes the Chapter 7 Trustee has a right to Edwards' funds that were deposited with Brown, Winick. If the Chapter 7 Trustee (and the U.S. Trustee) believe that these funds should not be returned to Edwards, then it follows that any party with such a belief must also believe that Edwards has conferred a tangible benefit upon the bankruptcy estate. While Edwards disputes that anyone other than Edwards has a right to the deposited funds, it is inconsistent for others to say both that the deposited funds belong to the bankruptcy estate but that Edwards' claimed administrative expenses have conferred no tangible benefit on the bankruptcy estate. Any party contending that the $75,000 deposited by Edwards should not be returned to Edwards should be estopped from taking the inconsistent position that Edwards has conferred no tangible benefit upon the estate. Indeed, the fact that the Chapter 7 Trustee is in a position to even make the argument, however weak it might be, confers some tangible benefit by virtue of having a chance to pursue recoupment of additional alleged estate property. The payments by Edwards underlying this Administrative Expense Claim were at the time made in an effort to get to the point of conferring the ultimate purchase price upon the estate. The Chapter 7 Trustee (the position of the U.S. Trustee is not clear on this issue) appears to believe that Edwards nevertheless has conferred a $75,000 benefit upon the bankruptcy estate. Payment of the $75,000 cannot be segregated from payment of the claimed administrative expenses, as all were a part of the same ongoing process.

Finally, Edwards is entitled to approval of its Administrative Expense Application because Edwards was misled by the Debtor. The Debtor certainly has "unclean hands". This

3

case features unique facts that fully warrant approval of Edwards' Administrative Expense application (Filing No. 284). The Court's factual findings are set forth in its order of August 17, 2015 and the Court can take judicial notice of its findings. The transaction with Edwards did not close because of circumstances involving failure of the Debtor to fully disclose key agreements with General Motors. The contributions of Edwards that form the basis of its Administrative Expense Claim all arose *prior* to Edwards learning of the facts that led to denial of the Motions to Assume and Assign, which were addressed in the Court's Order. (Filing No. 256). These specifically included the existence of agreements between Debtor and General Motors that went beyond the franchise agreement that was represented by the Debtor to be the sole agreement with GM, including an Exclusive Use Agreement and a Summary Agreement. Edwards learned that the status of the Gretter dealership operation was not approved by Ford or GM despite Debtor's representations otherwise. Edwards would not have paid the funds to Debtor that constitute the Administrative Expense claim if the Debtor had provided full disclosure.

Any entity is permitted to file an Administrative Expense claim, and Edwards certainly is not barred based upon its status. Use of the word "including" in 11 U.S.C. Sec. 503(b) indicates that the Administrative Expenses permitted are not limited to the types specifically enumerated in the statute. "[P]rincipal aim of Section 503 is to encourage parties to render post-petition services to debtors by ensuring that payment will be made on a priority basis in the post-petition period." *See In re FBI Distrib. Corp.*, 330 F.3d 36, 41 (1st Cir. 2003). Edwards respectfully submits that under the circumstances preset in this matter, Edwards' Application for Administrative Expense should be granted. "[D]amages arising from the postpetition tortious and wrongful conduct of a debtor may qualify as administrative expenses within the meaning of

4

11 U.S.C. § 503(b)." *Fazio v. Growth Dev. Corp. (In re Growth Dev. Corp.)*, 168 B.R. 1009, 1019 (Bankr. N.D. Ga. 1994).

WHEREFORE, Edwards respectfully requests that the Court grant Edwards' Application for Administrative Expenses.

Respectfully submitted: November 10, 2015.

By: */s/ Matthew V. Rusch*
Tiernan T. Siems, #IS9997650
Matthew V. Rusch, # IS9997652
ERICKSON & SEDERSTROM, P.C.
10330 Regency Parkway Drive
Omaha, NE 68114
(402) 397-2200
mrusc@eslaw.com
Attorneys for Edwards Auto Plaza, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2015, the foregoing document was filed electronically with the Clerk of Court using the Court's CM/ECF system, which sent notification to all individuals who requested such notice through the CM/ECF system.

*/s/ Matthew V. Rusch*